GRIGGS, Appellant, vs. BECKER, Respondent.

*March 1 — March 16, 1894.*

*Foreign judgment: When entitled to faith and credit: Summary proceeding to fix attorney's compensation: Jurisdiction.*

Upon a motion by the plaintiff in certain actions in the supreme court in New York to compel his attorney to give up the papers and to have another attorney substituted, the attorney, claimed that a balance was due for his services and asked for a reference to determine the amount. The substitution was granted on condition that plaintiff give bond to pay any sum found due the attorney, and a reference was ordered. The plaintiff gave a bond acceptable to the attorney. The referee having found a certain sum to be due the attorney, his report, with some modification, was confirmed, and judgment was entered accordingly. On appeal by the plaintiff to the general term, such judgment was reversed, and a judgment for costs was ordered and entered in favor of the plaintiff and against the attorney. These proceedings were authorized by the statutes of New York. In an action in this state upon the judgment last mentioned, it is *held* to be in effect a final judgment rendered in a judicial proceeding and entitled to full faith and credit.

APPEAL from the Superior Court of *Milwaukee* County.

On February 18, 1881, the defendant, *Becker*, was retained by the plaintiff, *Griggs*, to commence and prosecute an action of libel in favor of said *Griggs* and against John S. and Emeline Brooks and Francis Estabrook, and also an action for slander in favor of said *Griggs* and against said John S. Brooks. On February 28, 1881, he commenced those actions in the supreme court of New York, in and for the county of Kings, by the service of a summons and complaint therein. On November 1, 1881, and while said actions were still pending, the said *Becker* presented a bill to said *Griggs* for services in said actions, claiming a balance due of $628.45. On November 9, 1881, they had a conference in respect to the same, and *Griggs* claimed that the charge

was too much. On November 11, 1881, *Griggs* paid to *Becker* $96.45, and took his receipt for the same and for a prior payment of $107; it being stated therein that the same was for services rendered, including disbursements, and the amount being in full to date for professional services rendered in said actions.

On November 14, 1881, *Becker* refused to give up the papers in said actions and consent that Hudson be substituted as an attorney in his place. On November 16, 1881, *Griggs* obtained an order on *Becker* to show cause why he should not give up such papers and consent to such substitution. *Becker* opposed such motion, upon affidavits,— claiming the right to remain as *Griggs'* attorney in said cases, and also claiming a large amount for services,— and asked "that a reference should be had to determine the value of deponent's [*Becker's*] services herein, and that a substitution ought not to be granted herein until deponent is fully compensated for such services." Upon the hearing of said motion, at special term, it was ordered that said substitution be granted upon condition that an undertaking in the sum of $700, executed by two sufficient sureties, to be approved by the court, be given to said *Becker*, to pay any sum which might be found due to him in said actions of libel and slander, and that said matter be referred to Hon. Samuel Jones, to take the proofs of the respective parties, and to determine what amount, if any, is due from said *Griggs* to said *Becker* for costs, counsel fees, or disbursements in said actions. On November 21, 1881, *Griggs* gave to *Becker* such bond, and *Becker* consented thereon, in writing, that the same might be approved by the court. On November 29, 1881, the said referee took the requisite oath as such referee. Thereupon a hearing was had before the referee, and some thirty-nine witnesses sworn and a large amount of testimony taken, much of which was on behalf of said *Becker*. At the close of the hearing, No-

vember 27, 1882, the referee made his report, to the effect
that the said *Becker* was entitled to have and receive from
said *Griggs*, for his services in said libel and slander ac-
tions, the sum of $751.45, together with his disbursements,
and such costs as might be allowed by the court. On De-
cember 9, 1882, the said *Becker* moved the court to con-
firm said report. On January 2, 1883, the said court, at
special term, Justice CULLEN presiding, reduced the amount
which said *Becker* should so recover for services to $525,
but otherwise confirmed the report, and ordered judgment
thereon, with referee's fees and certain disbursements and
motions; and in pursuance thereof, and on January 9, 1883,
judgment was entered upon said report as modified, with
costs and disbursements taxed, amounting in the aggregate
to the sum of $1,182.85.

On January 15, 1883, the said *Griggs* appealed from said
order or judgment to the general term of said court. At a
general term of said supreme court held at Kings county
courthouse in Brooklyn, N. Y., on the 2d Monday of Feb-
ruary, 1883, "Present, Hon. JOSEPH F. BARNARD, presiding
justice, Hon. CALVIN E. PRATT and Hon. J. O. DYKMAN, jus-
tices," an order was entered that the said order of the spe-
cial term, dated and entered November 19, 1881, be in all
things reversed, and the motions whereon the said order
was made were thereby granted; and the said Hudson was
thereby substituted as attorney for the plaintiff in said ac-
tions in place of said *Becker*, as of the date of said order.
And it was further ordered that said order of the special
term entered January 9, 1883, be in all things reversed,
vacated, and set aside; and it was further ordered that the
said *Griggs* recover of the said *Becker* $10 costs of each of
said motions for substitution, and $10 costs of the motion
to confirm the report of referee, and $100 allowance on said
reference, together with the costs and his disbursements on
said reference, and the costs and his disbursements on such

appeal, which costs and disbursements on the reference and appeal were thereby allowed, under and by virtue of sec. 3240 of the Code of Civil Procedure, at the full rates therein authorized, and the clerk was thereby directed to tax said costs and disbursements, and insert the same in such order, or at the foot thereof, as a part thereof, and that said *Griggs* have judgment against said *Becker* for the amount of the motion costs and allowance above set forth, together with the amount of costs and disbursements so to be taxed and entered by the clerk. In pursuance of such order, judgment was thereupon entered by such clerk accordingly.

In September, 1892, this action was commenced in the superior court of Milwaukee county on such judgment, and to recover the amount thereof. The complaint contained the necessary allegations showing such judgment. The defendant answered by way of general denial, and in effect alleged that the supreme court of the state of New York, held in and for Kings county, had neither power nor jurisdiction to render or enter said judgment against said *Becker*.

At the close of the trial of such issue, the jury having been waived, the court made and filed findings of fact and conclusions of law, reciting many of the facts mentioned, and, among other things, that the judgment so rendered in the supreme court of New York was not in any action or special proceeding wherein said *Becker* was a party, and was not a final judgment; that said supreme court had not the power to grant the allowance contained in said judgment, nor to tax the costs mentioned therein, and that said judgment was not authorized by the laws of New York; and that said supreme court of New York had no power or jurisdiction to direct the entry or docketing of said judgment, and that the same was void. Judgment was accordingly directed in favor of said *Becker* and against said *Griggs*, that the complaint herein be dismissed, with

costs, which were thereby awarded to the defendant, *Becker*, and against the plaintiff, *Griggs*. Judgment was thereupon entered according to said findings, dismissing said complaint, and for costs. From that judgment the plaintiff appeals.

*E. G. Comstock*, for the appellant.

For the respondent there were briefs signed by *Danforth Becker*, in person, and *Charles N. Gregory*, and the cause was argued orally by *Mr. Gregory*.

CASSODAY, J. The courts of this state are bound, by constitutional mandate, to give full faith and credit "to the public acts, records, and judicial proceedings of every other state." Const. of U. S. art. IV, sec. 1; *Sanborn v. Perry*, 86 Wis. 361. If a judgment is conclusive in the state where rendered, then it is equally conclusive in every other state of the Union; and if it is re-examinable there, then it is open to the same inquiries in every other state. *Ibid.* In order to entitle such public acts, records, and judicial proceeding of other states to such faith and credit, they must be proved as facts by competent evidence. *Osborn v Blackburn*, 78 Wis. 209; *Hanley v. Donoghue*, 116 U. S. 1; *Chicago & A. R. Co. v. Wiggins Ferry Co.* 119 U. S. 616. Here, there is no question but that the judicial proceedings and the record of the alleged judgment in the supreme court of New York for Kings county are properly authenticated under the seal of that court, and, with the statutes of New York, are in evidence. To entitle such judgment to such full faith and credit, it must appear from such record that the court rendering the same had jurisdiction of the person of the defendant and of the subject matter of the action or proceeding. *Thompson v. Whitman*, 18 Wall. 457; *Knowles v. G. L. & C. Co.* 19 Wall. 58; *Simmons v. Saul*, 138 U. S. 439. Here there can be no question but that the New York court obtained jurisdiction of the person of both the

Griggs vs. Becker.

defendant and the plaintiff. The defendant resided in New York and was the attòrney for the plaintiff in the two suits then pending against other parties. The plaintiff and defendant got into a controversy in respect to the defendant's charges for professional services in such other suits. The plaintiff instituted the proceeding against the defendant to compel him to deliver up the papers in those cases, and to have another attorney substituted in his place. The defendant claimed a large balance for fees, and requested a reference to determine the amount. The plaintiff gave a bond acceptable to and accepted by the defendant, and the reference was had accordingly; and a large amount of testimony was taken, and expenses made thereon. The referee's report was favorable to the defendant. The plaintiff resisted its confirmation on the ground that the court had no jurisdiction. The court held it had jurisdiction, and upon the defendant's motion the same was, with some modifications, confirmed by the court, and judgment entered thereon accordingly. The plaintiff appealed from that judgment to the general term, where the same was reversed and judgment ordered and entered against the defendant for the plaintiff's costs incurred in such proceeding. It is very manifest that the court had jurisdiction of the person of the defendant.

The only serious question presented is whether the record before us is a record in an action or judicial proceeding, within the meaning of the constitutional provision mentioned. In óther words, did the court have jurisdiction of the subject matter? It seems to have been well established at common law that under proper circumstances a court would entertain summary jurisdiction to compel an attorney, as an officer of the court, to deliver papers to his client or to any other person rightfully entitled to the same. *Strong v. How,* 8 Mod. 339; *Hughes v. Mayre,* 3 Term, 275; *In ré Aitkin,* 4 Barn. & Ald. 47. Especially should that be

so where the paper, money, or other thing has been received by such attorney in the course of his professional employment in a case pending in such court. And where such attorney claims such money as compensation for his services, or claims such papers or property as security for such compensation, the court may summarily determine the amount due for such compensation, and, upon the deduction or payment of the same, compel the balance of such moneys, or such papers and property, to be delivered over to the client. *Burns v. Allen*, 15 R. I. 32; *Orr v. Tanner*, 12 R. I. 94; *Bowling Green S. Bank v. Todd*, 52 N. Y. 489; *In re Knapp*, 85 N. Y. 284. In this last case it was held, in effect, that where it appears that an attorney retains his client's money, claiming a lien thereon, and upon the facts stated the right is clear and only the amount in question, the court has jurisdiction to determine that question, on application to compel the payment of the moneys retained, although the items of the attorney's account are such as, in ordinary cases, would subject them to taxation, and that such question might be determined by the court at special term, by a referee, or by a jury passing upon an issue sent to it. In that case the general term reversed the order of the special term on the ground that certain of the charges were too much; and the court of appeals reversed the judgment of the general term on the ground that it did not appear but that the deductions suggested by the general term had in fact been made by the referee and the special term, and was therefore error. But the court of appeals in no way questioned the jurisdiction of the general term to review such order or judgment of the special term.

The Revised Code of New York provides that an appeal may be taken to the general term from an interlocutory judgment rendered at a special term. Bliss' Ann. Code N. Y. sec. 1349. That Code also provides, in effect, that costs in a special proceeding instituted in a court of record,

Griggs vs. Becker.

or upon an appeal in a special proceeding taken to a court of record, where the costs thereof are not specially regulated therein, may be awarded to any party, in the discretion of the court, at the rates allowed for similar services in an action brought in the same court or an appeal from a judgment taken to the same court, and in like manner. Id. sec. 3240. That Code also provides, in effect, that the order of the supreme court, at general term, made upon such an appeal must be entered, and the papers upon which the appeal was heard must be filed, in the office of the same clerk; that such entry of the order is sufficient authority for any proceeding in the court below, or before the judge who made the order appealed from, which the judgment or order of the appellate court directs or permits. Id. sec. 1345.

The statutes of New York appear to have authorized the proceeding had, and everything done in the courts of that state, in the controversy in question. It may be that the defendant was not obliged to submit the determination of the amount of his claim for services to the court or referee in such summary proceeding, but he, as well as the plaintiff, did voluntarily so submit the same. The defendant insisted upon the plaintiff's abiding by the result, so long as the determination was in his favor, and it was too late for him to escape the payment of costs incurred therein, after the order or judgment in his favor was reversed by the general term.

It must be observed that the defendants in the libel and slander suits were in no way interested in, and could in no way be affected by, such determination of the controversy between the plaintiff and the defendant. The defendant's connection with those actions was only as an attorney to prosecute the same; and the determination of the controversy between him and the plaintiff could in no way affect the judgment to be entered in either of those actions, and

Griggs vs. Becker.

hence cannot properly be regarded as interlocutory.   Nevertheless, such determination was in a judicial proceeding, and the record thereof is a public record, to which this court is bound to give "full faith and credit."   The reasons in favor of such ruling are similar but much stronger than where a decree is made as to one of several defendants whose interests are not at all connected with each other, with direction for the payment of costs as to that defendant; and yet it has been held that such a decree is final as to such defendant, although the cause may be still pending in the court as to the rest.   *Royall v. Johnson*, 1 Rand. (Va.), 421; 12 Am. & Eng. Ency. of Law, 63, 64.

We must hold that the adjudication in pursuance of the mandate of the general term was in effect a final judgment against the defendant.   If it was erroneous, it should have been corrected in the court of appeals of that state, but it is not within the province of this court to correct any mere error in the rendition of such foreign judgment.   In the absence of fraud, we are confined to the questions of jurisdiction.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded with directions to enter judgment in favor of the plaintiff for the amount of the New York judgment, with the legal interest thereon and the costs of this action.