(44 Misc. Rep. 64.)

BALDWIN et al. v. RICE et al.

(Supreme Court, Special Term, New York County.  June, 1904.)

1. EXECUTORS AND ADMINISTRATORS—FOREIGN WILLS—ANCILLARY LETTERS.
    Where wills are recorded on the production of an exemplified record of
    probate in a foreign state under Code Civ. Proc. § 2695, the surrogate's
    power is limited to the issue of ancillary letters testamentary or ancillary
    letters of administration with the will annexed.

2. SAME—QUALIFICATIONS.
    While the filing of a foreign will with authenticated record of its pro-
    bate in another state conferred on the surrogate authority to issue ancillary
    letters, his authority was limited by Code Civ. Proc. § 2697, to issue such
    letters to the person named in the foreign letters or the person otherwise
    entitled to the possession of the personal property of the decedent, unless
    another person applies therefor, and files with his petition an instrument
    executed by the foreign executor or administrator authorizing the peti-
    tioner to receive such ancillary letters; and an appointment of an admin-
    istrator, not bringing himself within the terms of such section, is void.

3. SAME—APPOINTMENT—COLLATERAL ATTACK.
    Where a surrogate, on the filing of the record of a probate of a foreign
    will in a foreign state, appoints as ancillary administrator a person not en-
    titled to the office, defendant, in an action by such administrator, can call
    in question the validity of plaintiff's appointment and capacity to maintain
    the action.

4. SURROGATE'S COURT—JURISDICTION.
    The Surrogate's Court, while a constitutional court so far as concerns
    its existence, possesses only such jurisdiction and powers as are conferred
    upon it by statute.

5. JUDGMENT—RES JUDICATA.
    Where a court of the United States, sitting in equity, adjudged that
    there was no validity in a claim asserted by the executor of a decedent, to
    whom letters were issued in the domicile of his testatrix as against the
    local administrator of another decedent, the judgment is a bar to an ac-
    tion in another jurisdiction by one claiming to be the administrator with
    the will annexed of said testatrix, against the representatives of the al-
    leged debtor in such other jurisdiction.

6. SAME—ENTRY BY CONSENT.
    Where a judgment has been entered by a federal court adjudicating a
    claim by the executor of a decedent and the local administrator of another
    decedent, the validity of the judgment cannot be assailed by the admin-
    istrators with the will annexed of such decedent on the ground that it was
    entered by consent or by agreement of compromise.

7. SAME.
    Where a court which entered a decree had jurisdiction of the parties and
    the subject-matter, and no fraud was practiced on the court or by either
    of the parties to the suit in the entry of the decree, it cannot be attacked
    by an action attempting to adjudicate the same questions by the privies.

8. FEDERAL COURTS—JURISDICTION—DIVISION OF DISTRICT.
    By Act Cong. March 11, 1902, c. 183, 32 Stat. 64, the Southern District
    of Texas was created, and pending actions were transferred from the
    Eastern District.  The act also provided that those causes should be re-
    tained in the Eastern District in which evidence had been taken before the
    "present District Judges of the jurisdiction and districts of Texas as here-
    tofore constituted."  Held, that an action in which the sole plaintiff had
    died was transferred thereby, it being a pending action, and could be re-
    vived in the new district by the administrator of the deceased plaintiff.

9. SAME—TRANSFER OF CAUSE.

Act Cong. March 11, 1902, c. 183, 32 Stat. 64, creating the Southern District of Texas, and providing that those cases should be retained in the Eastern District, in which evidence had been taken "before the present District Judges," did not prevent the transfer of a cause from the Eastern District to the newly created Southern District of a case in which the testimony had been taken by deposition, and before special examiners, prior to the creation of the new district.

·Action by Adele Baldwin and William O. Harrison against William M. Rice and others.   Dismissed.

Action for the construction of a will.   This was an action by persons suing as administrators with the will annexed of a deceased testatrix (a wife) to recover a sum of money from the executors of a deceased testator (her husband), which they asserted the right to recover as the proceeds of property alleged by the plaintiffs to have been held by the husband and wife as community property under the laws of Texas.   The plaintiffs claimed under an appointment of the Surrogate's Court of New York county, and alleged that the defendants, who had received letters testamentary from the Surrogate's Court of New York county, had assets of their testator which originated in community property of the husband and wife, and that such assets were, to the extent of the wife's interest in the community property in which they originated, unadministered assets of the deceased wife's estate in New York county, and were therefore applicable to the payment of the claim asserted by the plaintiffs as representatives of the deceased wife.   The husband and wife were married in Texas.   The plaintiffs showed that under the laws of Texas the subsequent acquisitions of either spouse (with certain exceptions) were community property, owned in equal undivided portions by husband and wife, and that each spouse on dying could dispose by will of his or her share of the community property.   Mrs. Rice died before her husband, leaving a' will, by which she bequeathed a very large amount in legacies.   Her will was admitted to probate in Houston, Tex., and Oran T. Holt, the executor named in her will as independent executor, under the laws of Texas, received letters testamentary from the county court of Harris county, a court of probate in Texas. He promptly brought suit against William M. Rice, the husband of his testatrix, to recover assets of the estate alleged to exist, as community property, in the hands of her husband.   This suit was brought in a state court, and was removed to a federal court on the ground of diversity of citizenship, and was pending at the time of the death of William M. Rice.   Two other similar suits were brought against alienees of Rice.   These three are the suits in which judgments were obtained that are incidentally mentioned in the opinion as "the other judgments read in evidence."   William M. Rice defended the suit brought against him by Holt, and instituted an action against Holt in the United States Court for the Western District of Texas to test the validity of the claim asserted by Holt, and to declare it void, and to remove it as a cloud upon Rice's title to property in Texas.   Rice denied the validity of the executor's contention on the ground that, though married in Texas, he was not a citizen of Texas at the time, and never became a citizen of Texas thereafter, and that the community laws of Texas did not apply to his property.   In each of the Texas suits testimony was taken by deposition and also by special examiners of the court, and was returned to the clerk's office of the court.   Before any of the suits in Texas came to trial, Wm. M. Rice, the husband, died in New York City.   Rice's will was propounded for probate in New York county, and was contested.   See Matter of Will of Rice, 81 App. Div. 223, 81 N. Y. Supp. 68; Id., 176 N. Y. 570, 68 N. E. 1123.   Pending the contest in New York over his will, letters of temporary administration were granted upon his estate in Texas, and, his will not having been probated in Texas, permanent letters of administration were granted upon his estate to Horace B. Rice by the county court of Harris county, Tex.   Horace B. Rice, the administrator in Texas, having received authority from the court of his appointment, entered into an agreement of compromise and settlement with Oran T. Holt, executor of Mrs.

Rice, wherein, among other things, it was agreed that upon payment of a sum agreed to be received in satisfaction of all claims and demands asserted by Holt, and disputed and denied by Wm. M. Rice in his lifetime, the suits embodying the dispute between Holt and Wm. M. Rice should proceed to decree adjudicating against Holt. Meanwhile Congress had created the Southern District of Texas (Act March 11, 1902, c. 183, 32 Stat. 64), and had transferred thereto all cases pending in the Eastern District of which the Southern District would now have territorial cognizance, providing, however, for the retention in the Eastern District of all pending causes in which the testimony, or any part of it, had been already taken before a judge. The causes involving the dispute between Holt and Rice were revived by Rice's Texas administrator, and proceeded to judgment and decree pursuant to the agreement of settlement and compromise, adjudging the invalidity of the claim asserted by Holt. One of those suits was within the territorial cognizance of the Southern District of Texas, was deemed by Holt and Rice, administrator, to have been transferred thereto from the Eastern District, by the terms of the act of Congress, notwithstanding testimony had been taken therein by deposition and before special examiners, and the action was revived in the Southern District, and proceeded to a decree therein. Certain of the legatees of Elizabeth B. Rice were residents of New York. They deemed themselves aggrieved by the action of Mr. Holt, and one of them—Adele Baldwin—petitioned the Surrogate's Court of New York county, upon an exemplified record of the probate proceedings upon Mrs. Rice's will in Texas, for the recording of the same in the said surrogate's office, and the issue of letters with the will annexed thereon to the petitioner, joining Wm. Ogden Harrison with her as coadministrator. The surrogate admitted the exemplified will and proofs to be filed in his office, and issued a citation and order to show cause directed to Oran T. Holt, directing him to qualify as executor in New York, or show cause why he should not be deemed to have renounced. The citation and order were served on Holt personally in Texas pursuant to an order of publication or personal service outside of the state. On the return day, as Holt failed to appear, the surrogate made a decree that he be deemed to have renounced, and issued letters of administration with the will annexed to the present plaintiffs. The contest over the will of Wm. M. Rice in New York having ended with a judgment by the Court of Appeals affirming a decree of the surrogate of New York county admitting it to probate, the present defendants, named as executors in his will, received letters testamentary in New York. The plaintiffs sued the defendants to obtain a judgment subjecting New York assets of Wm. M. Rice to the claim of plaintiffs, as administrators with the will annexed of his deceased wife, for the purpose of paying New York legatees of his deceased wife who had not accepted the settlement effected by her Texas executor. The defendants interposed numerous defenses; among them that the appointment of the plaintiffs.was void, and that the surrogate made it without jurisdiction or authority; that the plaintiffs were without capacity to sue, and that the judgments between the Texas executor of Mrs. Rice and the Texas administrator of Mr. Rice were res adjudicata between the present parties, and a bar to this action. Upon the trial, when the judgment between Rice and Holt, the decree of the Southern District of Texas, was offered in evidence in behalf of defendants, it was objected to, among other grounds, on the ground that the court was without jurisdiction, because the action was instituted before the creation of the Southern District, was pending in the Eastern District when Wm. M. Rice died, abated upon his death, and was, therefore, not a pending action transferred to the Southern District by the act creating the Southern District; and, further, because it was an action which, if deemed pending within the terms of the act, still was retained in the Eastern District by virtue of that provision of the law which retained causes in which evidence had been taken before a judge.

Arthur B. Turnure (Jared F. Harrison and John Brooks Leavitt, of counsel), for plaintiffs.

Hornblower, Byrne, Miller & Potter (John M. Bowers, James Byrne, and Charles A. Bostin, of counsel), for defendants.

SCOTT, J. After further consideration of the provisions of the Code of Civil Procedure and a careful reading of the authorities cited upon the opposing briefs, I find myself confirmed in the opinion, expressed upon the trial, that the Code is intended to preserve, and does consistently preserve, a marked distinction between wills admitted to probate in this state and those which are permitted to be filed or recorded upon the production of an exemplified record of probate in a foreign state. Upon wills of the latter class the surrogate's power is limited to the issue of ancillary letters testamentary, or ancillary letters of administration with the will annexed. Section 2695. The sections so confidently relied upon by plaintiffs (sections 2642, 2643) apply by their very terms to the case of a renunciation or refusal to qualify of an executor named in a will which has been admitted to probate. The will of Elizabeth B. Rice has not been admitted to probate in this state. The plaintiffs' petition asked that it be recorded in the surrogate's office, and the decree of the surrogate merely directed that "the will of the said Elizabeth B. Rice, with the proofs and decree adjudging probate thereof be filed in the office of the surrogate of the county of New York." It matters not that neither in the surrogate's decree nor in the letters of administration are the plaintiffs described as ancillary administrators. They could not have been appointed other than ancillary administrators under such proceedings as were had in respect to this will. But while the filing of the foreign will with the authenticated record of its probate in Texas conferred upon the surrogate authority to issue ancillary letters, he had no authority to issue such letters, or any letters to these plaintiffs. Section 2697 of the Code limits the issue of such letters to the person named in the foreign letters or to the person otherwise entitled to the possession of the personal property of the decedent "unless another person applies therefor, and files with his petition an instrument executed by the foreign executor or administrator or person otherwise entitled as aforesaid, authorizing the petitioner to receive such ancillary letters." The plaintiffs did not bring themselves within the terms of this section, and hence their attempted appointment by the surrogate was void. As was remarked in Montgomery v. Boyd, 78 App. Div. 64–71, 79 N. Y. Supp. 879, with respect to a nonresident decedent leaving assets in this state, "No one can take out administration here except through or by the voluntary action of the foreign executor." The defendants have the right to call in question in this action the validity of plaintiffs' appointment and their resultant capacity to maintain this action. The Surrogate's Court, while it is now a constitutional court so far as concerns its existence, possesses only such jurisdiction as is conferred upon it by statute, and only such powers as are either expressly conferred upon it or are necessarily incident to the exercise of its statutory jurisdiction. Bevan v. Cooper, 72 N. Y. 327; Riggs v. Cragg, 89 N. Y. 479; Matter of Bolton, 159 N. Y. 134, 53 N. E. 756. Therefore any one claiming title or authority under a decree of a Surrogate's Court must be prepared to show that the court had jurisdiction to make the decree (Matter

of Hawley, 104 N. Y. 262, 10 N. E. 352), and such a decree may always be attacked collaterally for lack of jurisdiction in the surrogate (Taylor v. Syme, 162 N. Y. 519, 57 N. E. 83). My conclusion is that the attempted appointment of plaintiffs as administrators with the will annexed of Elizabeth B. Rice, deceased, was void, and that they thereby acquired no capacity to maintain this action.

I am also of the opinion that, even if the plaintiffs had been lawfully appointed and had capacity to sue, the judgment of the Circuit Court of the United States in the action in which William M. Rice was originally plaintiff and Oran T. Holt, as executor, etc., of Elizabeth B. Rice, deceased, was defendant, would stand as a complete and impregnable bar to any recovery in this action. It is not important to consider the objections offered to the other judgments read in evidence, for it must be, and I understand is, conceded that the action to which I have referred involved the identical issues raised in this action, and that the judgment in that action, if valid and unimpeachable, constitutes a complete bar to a recovery in the present action. The plaintiffs seek to call in question that judgment in this action, upon the ground that it was entered upon the consent of Holt, the executor in Texas of Mrs. Rice's will; that he had no legal authority to give such consent; that it was given in pursuance of a collusive agreement between him and the personal representatives of William M. Rice, then deceased, which provided for a totally inadequate payment to Mrs. Rice's legatees; that the plaintiff Baldwin and certain other legatees have protested against the agreement, and refused to consent thereto, or to take anything thereunder. It is not contended that the Circuit Court had not jurisdiction to entertain the action, or that any fraud was committed in invoking that jurisdiction, or that any fraud was committed upon Holt to induce him to consent to a compromise of the action and the entry of a judgment therein. The only fraud charged is that Holt, as executor of Mrs. Rice's will, committed a fraud upon her legatees. I know of no principle upon which the judgment can be collaterally attacked in this action upon any of the grounds suggested. The plaintiffs seek to maintain this action in a representative capacity as administrators with the will annexed of Elizabeth B. Rice, deceased, and their claim to act in that capacity is based upon the refusal of Holt, the Texas executor, to take out ancillary letters in this state. They stand, therefore, so far as this action is concerned, in Holt's shoes, and can have no greater rights than he would have had if he had taken out letters here. It seems to be self-evident that he could not, for any of the reasons suggested by plaintiffs, have called into question the judgment of the federal court. It is well settled by an unbroken line of decisions that a judgment may be impeached, even collaterally, for fraud practiced in the procurement or concoction of the judgment itself by which the defendant was prevented from availing himself of his defense (Mayor v. Brady, 115 N. Y. 599, 22 N. E. 237), but an examination of the cases holding that doctrine will show that the fraud referred to is one practiced upon the defendant in the judgment. There is no

contention that any such fraud was practiced upon Holt in the case under consideration. It is also undoubtedly true that a collusive judgment may be questioned collaterally by parties who are injured by it, or against whom it is invoked as a bar, if they were neither parties to it nor privies. Spicer v. Waters, 65 Barb. 227; 2 Cowen & Hill's Notes, 854 et seq. That rule might be invoked by Mr. Rice's legatees if they were in a position to sue in their own behalf, but it is not available to these plaintiffs, suing in a representative capacity, and merely as the substitutes in this state of Holt, the executor by whose consent the judgment was entered.

The objection that the action was not properly transferred to the Circuit Court for the Southern District of Texas is untenable. The act of Congress of March 11, 1902, creating the Southern District, provided for the transfer of "pending" actions and proceedings. At that date, owing to the death of Wm. M. Rice, his action against Holt had abated. It was not, however, terminated, and was still pending. An action upon a cause which survives the death of a party is not ended by his death. It still remains pending, but is dormant, subject to be revived at any time by the substitution of the proper representative or successor in interest of the deceased party. Nor was the action excepted from the provision of the statute because an order had been made for the taking of testimony before examiners in equity. The proviso was that those causes should be retained in the court in which they originated, in which "evidence had been taken in whole or in part before the present District Judges of the judicial districts of Texas as heretofore constituted." Under the equity practice of the federal courts evidence taken before an examiner in preparation for the submission of the cause to the court cannot in any proper sense be said to have been taken before a judge. The evident intention of the proviso was that causes should not be transferred which had been partly tried before one of the judges. Such was not this case. For the reason that the judgment referred to is a bar to this action, not impeachable upon any ground stated in the reply, as well as for the reason that the plaintiffs have no legal capacity to maintain the action, there must be judgment dismissing the complaint upon the merits, with costs, but, under the circumstances, without an allowance.

Complaint dismissed, with costs.